**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Jeanette Kugel, Janine Mahlstadt, Eleanor Payne, Kimberly Pitcher, Vikramjeet Singh, Tiana Trader and Annette Winter,

Plaintiffs,

v.

Macy's, Inc.,

Defendant.

Civil Action No.: ______

**COMPLAINT**

For this Complaint, Plaintiffs, Jeanette Kugel,Janine Mahlstadt, Eleanor Payne, Kimberly Pitcher,Vikramjeet Singh, Tiana Trader and Annette Winter,by and through their undersigned counsel, state as follows:

## INTRODUCTION

1. Plaintiffs bringthis complaint for damages resulting from the illegal actions of Macy's Inc. ("Macy's" or "Defendant"). Defendant sent unauthorized text messages to each of the Plaintiffs' cellular telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA").

2. Wireless spam is a growing problem in the United States. In April 2012, the Pew Research Center found that 69% of texters reported receiving unwanted spam text messages, while 25% reported receiving spam texts weekly. http://www.pewinternet.org/fact-sheets/mobile-technology-fact-sheet/ (last visited February 9, 2016); *see also* Nicole Perlroth, *Spam Invades a Last Refuge, the Cellphone*, N.Y.Times, April 8, 2012, at A1 ("In the United States, consumers received roughly 4.5 billion spam texts [in 2011], more than double the 2.2 billion received in 2009 . . . .").

3. Macy's is anational department store retail chain. It has developed a sophisticated

multi-platform marketing program to promote its products and stores.

4. Among those platforms used and targeted, are consumers' mobile cellular telephone devices to which Macy's sends Short Message Service ("SMS" or "Text") messages promoting sales, offers and Macy's services.

5. Defendant did not provide Plaintiffs clear and conspicuous disclosure of the consequence of providing it their phone number, *i.e.* that the Plaintiffs agreed unambiguously to receive automated texts messages from or on behalf of Defendant.

6. The telemarketing messages were sent to Plaintiffs' cell phones by or on behalf of Defendant using a fully automated system. The messages were unauthorized and not sent for emergency purposes. Accordingly, Defendant's messages violated the TCPA.

## JURISDICTION

7. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S. Ct. 740, 751-53 (2012).

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Macy's resides in this District and because a substantial part of the events giving rise to the claim occurred in this District.

## PARTIES

9. Plaintiff Jeanette Kugel ("Ms. Kugel") is, and at all times mentioned herein was, an adult individual residing in Palm Beach Gardens, Florida, and is a "person" as defined by 47 U.S.C. § 153(39).

10. Plaintiff Janine Mahlstadt ("Ms. Mahlstadt") is, and at all times mentioned herein was, an adult individual residing in Shavertown, Pennsylvania, and is a "person" as defined by 47 U.S.C. § 153(39).

11. Plaintiff Eleanor Payne ("Ms. Payne") is, and at all times mentioned herein was, an adult individual residing in Lancaster, California, and is a "person" as defined by 47 U.S.C. § 153(39).

12. Plaintiff Kimberly Pitcher ("Ms. Pitcher") is, and at all times mentioned herein was, an adult individual residing in Costa Mesa, California, and is a "person" as defined by 47 U.S.C. § 153(39).

13. Plaintiff Vikramjeet Singh ("Mr. Singh") is, and at all times mentioned herein was, an adult individual residing in Durham, North Carolina, and is a "person" as defined by 47 U.S.C. § 153(39).

14. Plaintiff Tiana Trader ("Ms. Trader") is, and at all times mentioned herein was, an adult individual residing in Penns Grove, New Jersey, and is a "person" as defined by 47 U.S.C. § 153(39).

15. Plaintiff Annette Winter ("Ms. Winter") is, and at all times mentioned herein was, an adult individual residing in Parsippany, New Jersey, and is a "person" as defined by 47 U.S.C. § 153(39).

16. Macy's is a business entity with an address of 151 West 34th Street, New York, NY 10001, and is a "person" as defined by 47 U.S.C. § 153(39).

**THE TCPA**

17. The TCPA regulates, among other things, the use of automated telephone dialing systems ("ATDS").

18. Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

19. 47 U.S.C. § 227(a)(1) defines an ATDS as equipment having the capacity–

(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

(B) to dial such numbers.

20. "Prior express *written* consent" is required before making automated *telemarketing* calls, meaning there must be a written agreement, signed by the person receiving the call or text, with a "clear and conspicuous disclosure" that specifically authorizes the seller to send telemarketing communications using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200.

21. The FCC has clarified that text messages qualify as "calls" under the TCPA:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the party is charged." This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003); *see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).

## FACTUAL ALLEGATIONS AS TO INDIVIDUAL PLAINTIFFS

### I. Jeanette Kugel

22. In 2015, Macy's began placing automated text messages to Ms. Kugel's cellular telephone number, XXX-XXX-5105 (the "5105 Number").

23. The messages were so called "Macy's Promo Alerts" and set forth, for example:

AT&T
6:16 PM
37%
Messages
622-97
Details
Sun, Jun 14, 2:27 PM
Macy's Promo Alerts: Extra 25% off new styles, today only! Hurry & shop our Private Shopping Event: http://bit.ly/pRs5 Details: http://bit.ly/PrSl6 Txt STOP=End
Tue, Jun 16, 2:28 PM
Macy's Promo Alerts: Enjoy extra 20% off + last call for Free Guaranteed Father's Day Delivery: http://bit.ly/FdaE7 Details: http://bit.ly/fDaE7 Txt STOP=End.
Fri, Jun 19, 2:27 PM
Macy's Promo Alerts:
Text Message
Send
AT&T
6:16 PM
38%
Messages
622-97
Details
Fri, Aug 7, 2:27 PM
Macy's Promo Alerts: Last chance: don't miss extra 20% off, just for you! Shop now: http://mcys.co/1MIlYkY Details: http://mcys.co/1MImakg Reply STOP=stop.
Fri, Aug 14, 2:29 PM
Macy's Promo Alerts: Our One Day Sale is on! Shop web busters & great Deals of the Day now: http://mcys.co/1NaWYjy Reply STOP=stop.
Sun, Aug 16, 2:26 PM
Macy's Promo Alerts:
Text Message
Send

24. The texts were telemarketing. They advertised sales and promotions available at Macy's retail stores and on its website.

25. Defendant placed the text messages from telephone number 62297, an abbreviated phone number known as an SMS short code licensed and operated by Macy's.

26. Defendant's first text message to Ms. Kugel was in immediate response to a text message that Ms. Kugel sent to 62297 seeking a specific promotion or coupon.

27. Thereafter, Defendant began sending Ms. Kugel unprompted, automated text messages offering additional, separate promotions.

28. Ms. Kugel continued to receive Defendant's automated text messages through February 24, 2016.

29. In total, Defendant sent Ms. Kugel at least eighty (80) text messages to the 5105 Number.

**II. <u>Janine Mahlstadt</u>**

30. In or around 2013, Macy's began placing automated text messages to Ms. Mahlstadt's cellular telephone number, XXX-XXX-9696 (the "9696 Number").

31. The messages were the same so called "Macy's Promo Alerts" and set forth, for example:

●●○○○ AT&T
3:11 PM
55%
Messages
622-97
Contact
Text Message
Wed, Dec 23, 1:06 PM
Macy's Promo Alerts: Hurry! Extra 20% off + order online, pick up in store by 12PM tomorrow: http://mcys.co/1RkxRjn Details: http://mcys.co/1QqQjGU Txt STOP=End
Sat, Dec 26, 1:06 PM
Macy's Promo Alerts: Free Shipping at $25 + web busters end tomorrow! Shop our After Christmas One Day Sale: http://mcys.co/1IK76C6 Txt STOP=End.
Mon, Dec 28, 1:06 PM
Text Message
Send
●●○○○ AT&T
3:11 PM
55%
Messages
622-97
Contact
Sun, Jan 3, 1:38 PM
Macy's Promo Alerts: Hooray for Super Sunday! Take an extra 20% off great picks now: http://mcys.co/1kdfyya Details: http://mcys.co/1Ohbk4P Txt STOP=End.
Wed, Jan 6, 1:04 PM
Macy's Promo Alerts: Treat yourself to 25%-75% off + extra 15% off with code SALE: http://mcys.co/1NLs8Q7 Details: http://mcys.co/1NLtsm0 Txt STOP=End.
Sat, Jan 9, 1:36 PM
Macy's Promo Alerts: Ends
Text Message
Send



32. Defendant placed the text messages from number 62297, an abbreviated phone number known as an SMS short code licensed and operated by Macy's.

33. Defendant's first text message to Ms. Mahlstadt was in immediate response to a text message that Ms. Mahlstadt sent to 62297 seeking a specific promotion or coupon.

34. Thereafter, Defendant began sending Ms. Mahlstadt unprompted, automated text messages offering additional, separate promotions.

35. Ms. Mahlstadt continued to receive Defendant's automated text messages through February of 2016.

36. In total, Defendant sent Ms. Mahlstadtseveral dozen text messages to the 9696 Number.

## III. <u>Eleanor Payne</u>

37. In or around 2015, Macy's began placing automated text messages to Ms. Payne's cellular telephone number, XXX-XXX-6743 (the "6743 Number").

38. The messages were the same so called "Macy's Promo Alerts" described above.

39. Upon information and belief, Defendant obtained the 6743 Number when one of its employees asked Ms. Payne for her telephone number at a retail location.

40. Defendant placed the text messages from number 62297, an abbreviated phone number known as an SMS short code licensed and operated by Macy's.

41. Defendant began sending Ms. Payne unprompted, automated text messages offering promotions and coupons at its retail locations.

42. Ms. Payne continued to receive Defendant's automated text messages through March of 2016.

43. In total, Defendant sent Ms. Payne approximately two dozen text messages to the

6743 Number.

**IV. <u>Kimberly Pitcher</u>**

44. In 2015, Macy's began placing automated text messages to Ms. Pitcher's cellular telephone number, XXX-XXX-7631 (the "7631 Number").

45. The messages were the same so called "Macy's Promo Alerts" described above.

46. Defendant placed the text messages from telephone number 62297, an abbreviated phone number known as an SMS short code licensed and operated by Macy's.

47. Defendant sent Ms. Pitcher unprompted, automated text messages offering promotions and coupons at its retail locations.

48. Ms. Pitcher continued to receive Defendant's automated text messages through March of 2016.

49. In total, Defendant sent approximately four (4) text messages per week to the 7631Number.

**V. <u>Vikramjeet Singh</u>**

50. On or around August 29, 2014, Macy's began placing automated text messages to Mr. Singh's cellular telephone number, XXX-XXX-3575 (the "3575 Number").

51. The messages were the same so called "Macy's Promo Alerts" described above.

52. Defendant placed the text messages from number 62297, an abbreviated phone number known as an SMS short code licensed and operated by Macy's.

53. Defendant's first text message to Mr. Singh was in immediate response to a text message that Mr. Singh sent to 62297 in order to receive a coupon as part of an advertised promotion.

54. Thereafter, Defendant began sending Mr. Singh unprompted, automated text

messages offering additional, separate promotions.

55. Mr. Singh continued to receive Defendant's automated text messages through May of 2015.

56. In total, Defendant sent Mr. Singh at least forty-five (45) text messages to the 3575 Number.

**VI. <u>Tiana Trader</u>**

57. In or around 2014, Macy's began placing automated text messages to Ms. Trader's cellular telephone number, XXX-XXX-9670 (the "9670 Number").

58. The messages were the same so called "Macy's Promo Alerts" described above.

59. Defendant placed the text messages from number 62297, an abbreviated phone number known as an SMS short code licensed and operated by Macy's.

60. Defendant's first text message to Ms. Trader was in immediate response to a text message that Ms. Trader sent to 62297 seeking a specific promotion or coupon.

61. Thereafter, Defendant began sending Ms. Trader unprompted, automated text messages offering additional, separate promotions.

62. Ms. Trader continued to receive Defendant's automated text messages through February of 2016.

63. In total, Defendant sent Ms. Trader dozens of text messages to the 9670 Number.

**VII. <u>Annette Winter</u>**

64. In or around 2015, Macy's began placing automated text messages to Ms. Winter's cellular telephone number, XXX-XXX-8449 (the "8449 Number").

65. The messages were the same so called "Macy's Promo Alerts" described above.

66. Defendant placed the text messages from number 62297, an abbreviated phone

number known as an SMS short code licensed and operated by Macy's.

67. Defendant's first text message to Ms. Winter was in immediate response to a text message that Ms. Winter sent to 62297 seeking a specific promotion or coupon.

68. Thereafter, Defendant began sending Ms. Winter unprompted, automated text messages offering additional, separate promotions.

69. Ms. Winter continued to receive Defendant's automated text messages through February of 2016.

70. In total, Defendant sent Ms. Winter at least forty-three (43) text messages to the 8449 Number.

## FACTUAL ALLEGATIONS AS TO ALL PLAINTIFFS

71. Defendant's text messages received by Plaintiffs were fully automated. The content of the messages received by Plaintiffs was not individualized to any of the Plaintiffs in any way. The exact same text messages were automatically sent to thousands of consumers as a part of Defendant's pre-planned telemarketing campaign.

72. The text messages sent to Plaintiffs' cellular phone by Macy's advertised the availability of Defendant's products and services and thus constitute 'telemarketing.'

73. Any text messages that Plaintiffs sent to Defendant did not provide Defendant prior express written consent to send Plaintiff automated calls as required by the TCPA. Plaintiffs were not given clear and conspicuous disclosure that they were consenting to receive fully automated text messages to their respective cellular phones.

74. The text messages sent to Plaintiffs' cellular phones were made with an ATDS as defined by 47 U.S.C. § 227(a)(1). The ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

75. The telephone numbers messaged by Defendant were assigned to a cellular telephone service for which Plaintiffs incur charges for incoming messages pursuant to 47 U.S.C. § 227(b)(1).

76. The messages from Defendant to Plaintiffs were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

**COUNT I**

**Violations of the TelephoneConsumer Protection Act,**

**47 U.S.C. § 227, *et seq.***

77. Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporate them herein by reference.

78. Defendant sent multiple automated text messages to cellular numbers belonging to Plaintiffswithout their prior express written consent.

79. Each of the aforementioned messages by Defendant constitutes a violation of the TCPA.

80. Plaintiffs are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

**COUNT II**

**Knowing and/or Willful Violations of the Telephone Consumer Protection Act,**

**47 U.S.C. § 227, *et seq.***

81. Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporate them herein by reference.

82. Defendant knowingly and/or willfully sent multiple automated text messages to a cellular numbers belonging to Plaintiffswithout their prior express consent.

83. Each of the aforementioned messages by Defendant constitutes a knowing and/or willful violation of the TCPA.

84. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiffs are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## 7322-PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court grant Plaintiff and the Class the following relief against Defendant as follows:

1. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);
2. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);
3. An award of attorneys' fees and costs to counsel for Plaintiff; and
4. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: April 7, 2016

Respectfully submitted,

By /s/ Sergei Lemberg

Sergei Lemberg, Esq. (SL 6331)
LEMBERG LAW, L.L.C.
43 Danbury Road, 3rd Floor
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
Attorneys for Plaintiff